FILED
CLERK, U.S. DISTRICT COURT
4/30/2024
CENTRAL DISTRICT OF CALIFORNIA
BY: ___TV___ DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

January 2024 Grand Jury

| UNITED STATES OF AMERICA, | CR No. 5:24-cr-00114-AB |
|---|---|
| Plaintiff, | I N D I C T M E N T |
| v. | [18 U.S.C. § 1341: Mail Fraud; 18 U.S.C. §§ 981, 982, and 1029, and 28 U.S.C. § 2461(c): Criminal Forfeiture] |
| TAYLOR LANGLEY and KENNETH PHILLIPS, | |
| Defendants. | |

The Grand Jury charges:

COUNTS ONE THROUGH FIVE

[18 U.S.C. §§ 1341, 2(a), 2(b)]

[ALL DEFENDANTS]

A.  INTRODUCTORY ALLEGATIONS

At times relevant to this Indictment:

1.  California's Employment Development Department ("EDD") was the administrator of the unemployment insurance ("UI") benefits program for the State of California.

2.  On March 13, 2020, the President of the United States declared COVID-19 an emergency under the Robert T. Stafford Disaster Relief and Emergency Assistance Act.  As a result, Congress passed

the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), which the President signed into law on March 27, 2020. The CARES Act provided over $2 trillion in economic relief protections to the American people from the public health and economic impacts of COVID-19.

3. Prior to the enactment of the CARES Act, to be eligible for UI benefits administered by EDD, a person had to have been employed and worked in California and received at least a certain amount of wages from an employer in the 18 months preceding his/her UI benefits claim. Because of this requirement, self-employed workers, independent contractors, and employees with insufficient earnings were not eligible to receive regular UI benefits.

4. The CARES Act established a new program — Pandemic Unemployment Assistance ("PUA") — to provide UI benefits during the COVID-19 pandemic to people who did not qualify for regular UI benefits, including business owners, self-employed workers, independent contractors, and those with a limited work history, who were out of business or had significantly reduced their services as a direct result of the pandemic. UI benefits provided under the PUA program were sometimes referred to as PUA benefits.

5. Under the PUA provisions of the CARES Act, a person who was a business owner, self-employed worker, independent contractor, or gig worker could qualify for PUA benefits administered by EDD if he/she previously performed such work in California and was unemployed, partially unemployed, unable to work, or unavailable to work due to a COVID-19-related reason.

6. Persons applying for PUA benefits did not need to submit any supporting documents to EDD with their applications. Claimants

reported their total income for the 2019 calendar year on the application. The stated income was used to calculate the benefits to be paid, which were at least $167 per week.

7. A PUA benefits claimant was required to answer various questions on his/her application to establish his/her eligibility for the benefits. The claimant was required to provide his/her name, Social Security Number, and mailing address. The claimant was also required to identify a qualifying occupational status and COVID-19 related reason for being out of work.

8. After it accepted an application for UI benefits, including an application submitted pursuant to the PUA program, EDD typically deposited UI funds every two weeks to an Electronic Bill Payment ("EBP") debit card administered by Bank of America ("BofA"), which the claimant could use to pay for his/her expenses. The EBP debit card was mailed via the United States Postal Service from BofA to the claimant at the address the claimant provided as his/her mailing address on his/her UI benefits application.

B. THE SCHEME TO DEFRAUD

9. Beginning on or about June 19, 2020, and continuing through at least March 2021, in Riverside County, within the Central District of California, and elsewhere, defendants TAYLOR LANGLEY and KENNETH PHILLIPS, together with others known and unknown to the Grand Jury, each aiding and abetting the others, knowingly and with the intent to defraud, devised, participated in, and executed a scheme to defraud EDD and the United States Treasury as to material matters, and to obtain money and property from EDD and the United States Treasury, namely, UI benefits, including PUA benefits, by means of material

false and fraudulent pretenses, representations, and promises, and the concealment of material facts.

10. The fraudulent scheme operated, in substance, as follows:

a. Defendant PHILLIPS, who was at all times relevant to the scheme incarcerated in a California state prison, would obtain personal identifying information of inmates, including the inmates' names, dates of birth, and social security numbers, and pass that information to defendant LANGLEY using the prison phone system for the purpose of furthering the fraudulent scheme.

b. Defendant LANGLEY and co-schemers would also obtain personal identifying information of other individuals, including names, dates of birth, and social security numbers, in furtherance of the scheme.

c. Defendant LANGLEY and co-schemers would file with EDD, and defendant PHILLIPS would cause to be filed with EDD, fraudulent applications for UI benefits in the names of other persons, including persons who were incarcerated in California state prisons.

d. Defendant LANGLEY and co-schemers would falsely state and represent, and defendant PHILLIPS would cause to be falsely stated and represented, on the UI benefits applications that were filed with EDD, that the named claimants had worked at qualifying jobs and were individuals whose employment had been negatively affected by the COVID-19 pandemic, thereby triggering eligibility for UI benefits under the PUA provision of the CARES Act.

e. Defendant LANGLEY and co-schemers would falsely state and represent, and defendant PHILLIPS would cause to be falsely stated and represented, on the UI benefits applications that were filed with EDD that the named claimants resided and had worked in the

4

1  State of California, including in Riverside County, within the
2  Central District of California.
3        f.   By falsely stating, and causing to be falsely stated,
4  that the named claimants had worked in the State of California,
5  defendant LANGLEY and PHILLIPS and their co-schemers falsely
6  represented and caused to be falsely represented that the named
7  claimants were eligible for UI benefits administered by EDD when, as
8  defendants LANGLEY and PHILLIPS then knew, the named claimants were
9  not eligible for such benefits.
10       g.   As a result of the fraudulent UI benefits applications
11 that defendants LANGLEY and co-schemers filed and defendant PHILLIPS
12 caused to be filed, EDD authorized BofA to issue EBP debit cards in
13 the names of the named claimants.
14       h.   To ensure that they received the UI benefits that were
15 paid as a result of the fraudulent applications, defendant LANGLEY
16 and co-schemers listed and caused to be listed on the applications
17 for the UI benefits addresses to which they had access as the mailing
18 addresses for each of the named claimants.  Defendant LANGLEY and co-
19 schemers knew that, by doing so, they would cause BofA to mail the
20 EBP debit cards issued to the named claimants to these addresses,
21 thereby enabling defendant LANGLEY and co-schemers to take possession
22 of the EBP debit cards.
23       i.   After defendant LANGLEY received the EBP debit cards
24 issued as a result of the fraudulent scheme, defendant LANGLEY and
25 co-schemers used the debit cards to withdraw the UI benefits loaded
26 onto the debit cards by making cash withdrawals at Automated Teller
27 Machines ("ATMs") and by making purchases using those debit cards.
28

11. Through this scheme, defendants LANGLEY and PHILLIPS and their co-schemers caused at least 20 fraudulent applications for PUA benefits to be filed with EDD in the names of inmates, resulting in losses to EDD and the United States Treasury of approximately $308,630.

C. USE OF THE MAILS

12. On or about the dates set forth below, in Riverside County, within the Central District of California, and elsewhere, defendants LANGLEY and PHILLIPS, together with others known and unknown to the Grand Jury, each aiding and abetting the others, for the purpose of executing the above-described scheme to defraud, knowingly caused the following items to be delivered by the United States Postal Service according to the directions thereon:

| COUNT | DATE | DEFENDANT(S) | ITEM MAILED |
| --- | --- | --- | --- |
| ONE | July 3, 2020 | LANGLEY and PHILLIPS | EBP debit card ending in 3041 for an account in the name of inmate J.S. that was mailed by BofA to 12387 Heartstone Circle, Eastvale, California |
| TWO | July 10, 2020 | LANGLEY and PHILLIPS | EBP debit card ending in 3281 for an account in the name of inmate D.D. that was mailed by BofA to 12387 Heartstone Circle, Eastvale, California |
| THREE | July 12, 2020 | LANGLEY | EBP debit card ending in 2365 for an account in the name of inmate J.M. that was mailed by BofA to 12387 Heartstone Circle, Eastvale, California |
| FOUR | July 29, 2020 | LANGLEY | EBP debit card ending in 4555 for an account in the name of C.C. that was mailed by BofA to 12387 Heartstone Circle, Eastvale, California |

| COUNT | DATE | DEFENDANT(S) | ITEM MAILED |
|---|---|---|---|
| FIVE | July 30, 2020 | LANGLEY | EBP debit card ending in 1810 for an account in the name of P.N. that was mailed by BofA to 12387 Heartstone Circle, Eastvale, California |

FORFEITURE ALLEGATION

[18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c)]

1.  Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), in the event of any defendant's conviction of the offenses set forth in any of Counts One through Five of this Indictment.

2.  Any defendant, if so convicted, shall forfeit to the United States of America the following:

    (a)  All right, title, and interest in any and all property, real or personal, constituting, or derived from, any proceeds traceable to any of the offenses; and

    (b)  To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

3.  Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), the defendant, if so convicted, shall forfeit substitute property, up to the value of the property described in the preceding paragraph if, as the result of any act or omission of the defendant, the property described in the preceding paragraph or any portion thereof (a) cannot be located upon the exercise of due diligence; (b) has been

//

//

1 transferred, sold to, or deposited with a third party; (c) has been
2 placed beyond the jurisdiction of the court; (d) has been
3 substantially diminished in value; or (e) has been commingled with
4 other property that cannot be divided without difficulty.

A TRUE BILL

_____/s/_____
Foreperson

E. MARTIN ESTRADA
United States Attorney

MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division

SCOTT M. GARRINGER
Assistant United States Attorney
Deputy Chief, Criminal Division

BENEDETTO L. BALDING
Assistant United States Attorney
Deputy Chief, General Crimes Section

STEPHANIE L. ORRICK
Special Assistant United States Attorney
General Crimes Section